**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| ROSWITHA M. SAENZ, Individually and | § | |
| behalf of THE ESTATE OF | § | |
| DANIEL SAENZ, Deceased, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **Cause No. 3:14-cv-244-PRM** |
| | § | |
| THE CITY OF EL PASO TEXAS, | § | |
| G4S SECURE SOLUTIONS (USA) INC., | § | |
| OFFICER JOSE FLORES, AND JOHN | § | |
| DOE, EMPLOYEE OF G4S SECURE | § | |
| SOLUTIONS (USA) INC., NOW | § | |
| IDENTIFIED AS ALEJANDRO ROMERO, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S FOURTH AMENDED COMPLAINT

COMES NOW, ROSWITHA M. SAENZ, Individually and on behalf of THE ESTATE OF DANIEL SAENZ, Deceased (hereafter "Plaintiff"), complaining of THE CITY OF EL PASO, TEXAS, G4S SECURE SOLUTIONS (USA) INC., OFFICER JOSE FLORES and JOHN DOE, EMPLOYEE OF G4S SECURE SOLUTIONS (USA) INC. NOW IDENTIFIED AS ALEJANDRO ROMERO (hereafter collectively Defendants), and for cause of action would show the Court the following:

### I. PARTIES, JURISDICTION, AND VENUE.

1.  Plaintiff ROSWITHA M. SAENZ ("Roswitha Saenz") is the mother of DANIEL SAENZ, Deceased ("Daniel Saenz" or "Deceased") and legal representative of THE  ESTATE OF DANIEL SAENZ, Deceased, and resides in El Paso County, Texas.

1

2.      Defendant THE CITY OF EL PASO, TEXAS ("City of El Paso") is a governmental entity

doing business in El Paso County, Texas, and may be served with process by serving its

Honorable MAYOR OSCAR LEESER at 300 N. Campbell, El Paso, Texas, and/or

wherever he may be found, and has appeared so no further service of process is necessary.

3.      Defendant G4S SECURE SOLUTIONS (USA) INC. (Defendant "G4S") is a Florida

corporation doing business in El Paso, Texas, and may be served with process by serving

its registered agent, PRENTICE HALL CORP. SYSTEM, at 211 E. 7th Street, Suite 620,

Austin, Texas 78701, and/or by serving its President and/or any other officer authorized to

accept service of process on its behalf wherever he or she may be found, and has appeared

in this suit so no further service of process is necessary.

4.      Defendant OFFICER JOSE FLORES (hereinafter, collectively part of "Defendants,"

"Flores" or "Officer Flores") is a resident of El Paso County, Texas and may be served

with process c/o El Paso Police Department, 911 Raynor, El Paso, Texas 79903, and/or

wherever he may be found, and has appeared so no further service of process is necessary.

5.       Defendant JOHN DOE, EMPLOYEE OF G4S SECURE SOLUTIONS (USA) INC.

NOW IDENTIFIED AS ALEJANDRO ROMERO, is a resident of El Paso County, Texas

and may be served with process at 3408 Morehead Avenue, El Paso, Texas 79930, and/or

wherever he may be found and has appeared in this suit so that no further service of

process is necessary.

6.      This is an action for damages instituted by Plaintiff against Defendants wherein Defendants

are liable in monetary damages for the injuries suffered and death to DANIEL SAENZ,

Deceased, pursuant to the Texas Wrongful Death and Survival Acts, Sections 71.002 and

2

71.021 et seq. of the Texas Civil Practices and Remedies Code, and as permitted by 42 U.S.C. § 1983, the Texas Tort Claims Act, and as provided by law.  Plaintiff ROSWITHA SAENZ is the mother of DANIEL SAENZ, Deceased, and brings this action in her individual capacity and on behalf of THE ESTATE OF DANIEL SAENZ, Deceased.

7.      This Court has subject matter jurisdiction over the case and personal jurisdiction over the parties.  Venue is proper because all or a substantial part of the acts and omissions that give rise to this suit took place in El Paso County, Texas.  Plaintiff has performed all conditions precedent to the filing of this suit.  Plaintiff gave Defendants notice of her claims in accordance with the Texas Tort Claims Act and THE CITY OF EL PASO on or about September 4, 2013.  Said claim was denied.  As a result of Defendants' wrongful conduct in violation of Decedent's civil and constitutional rights, Decedent and Plaintiff suffered injury and damages, more fully described below.

### III. GENERAL ALLEGATIONS

8.      Plaintiff is a citizen of the United States of America.  Decedent was a citizen of the United States of America before his death.

9.      At all times relevant herein, Defendant  FLORES, (hereafter collectively referred to as "FLORES" or part of "DEFENDANTS"),  was a police officer with the El Paso Police Department (hereinafter also "EPPD") and was/is  an employee, agent and representative of the City of El Paso. At all times relevant hereto, said Defendant was acting within the course and scope of his employment as a police officer of the El Paso Police Department, a department and subdivision of Defendant City of El Paso.

10.     At all times relevant herein, Defendant  FLORES, was an El Paso Police Department

police officer and engaged in the conduct alleged herein under color of State Law, and through the auspices of the City of El Paso and the El Paso Police Department. Plaintiff alleges that the conduct and actions of FLORES as alleged herein occurred during FLORES' normal working hours as an El Paso Police Department police officer or occurred under the pretense that he either was acting as an  El Paso Police Department police officer or was made possible solely because of his position as an El Paso Police Department police officer.  Plaintiff further alleges that Defendant FLORES acted at all times herein under the auspices, direction, command, instruction, and/or control of the El Paso Police Department and Chief Greg Allen.

11.    At all times relevant herein, Defendant ROMERO, (hereafter collectively referred to as "ROMERO" or part of "DEFENDANTS"),  was an employee with G4S SECURE SOLUTIONS (USA) INC. (hereinafter also "G4S") and was/is  an employee, agent and representative of G4S. At all times relevant hereto, said Defendant was acting within the course and scope of his employment with G4S SECURE SOLUTIONS (USA) INC.

12.    At all times relevant herein, Defendant  ROMERO, was an employee of G4S SECURE SOLUTIONS (USA) INC. and engaged in the conduct alleged herein under color of State Law as a joint participant in the transportation of prisoners and/or detainees with the City of El Paso and the El Paso Police Department. Plaintiff alleges that the conduct and actions of ROMERO as alleged herein occurred during ROMERO's normal working hours as a joint state actor or occurred under the pretense that he either was acting as a joint actor with the  El Paso Police Department or was made possible solely because of his position as a joint actor with the El Paso Police Department.

4

13.   On or about March 8, 2013, Daniel Saenz (age 37 at the time of his death) was at
Albertsons Grocery Store at 2200 N. Yarbrough, El Paso, Texas.  While at the store,
Albertsons employees recognized that Daniel Saenz needed medical or psychiatric
attention when he advised employees that he was feeling ill, began to cry and asked for
hugs.  El Paso Police officers were dispatched to the store along with EMS personnel.
Upon arrival they witnessed Daniel Saenz crying as he was slouching on a motorized
shopping cart.  Daniel Saenz suffered from hypoglycemic episodes.  Daniel Saenz began to
twitch uncontrollably and was taken to Del Sol Medical Center for medical care.  Daniel
Saenz was taken into custody by Defendant City of El Paso instead of providing medical
care.  While in Defendants' custody, Daniel Saenz was searched and defendants confirmed
that he had no weapons.  In addition, Daniel Saenz was handcuffed, shackled, and tased
several times.  Apparently, Defendants recognized Daniel Saenz needed medical or
psychiatric care and determined he needed to be sent for hospitalization (even though he
was already at a hospital).

14.   While handcuffed, unarmed and restrained with both hands behind his back on the
premises of the jail with numerous law enforcement personnel available to transport him,
Daniel Saenz was cruelly, maliciously and with deliberate indifference to his medical
attention,  dragged by his handcuffs and shoulders across the floor rather than using a
wheel chair or other transportation device.   Moreover, Saenz was tased five times.  The
manufacturer of the taser warns that no more than four taser darts can be safely used on
victims.  Defendants knew or should have known that such actions would cause and did
cause extreme and excruciating conscious pain and suffering to Daniel Saenz.

5

15.     At the time that Saenz was dragged, he suffered from a serious head injury, that involved a deep laceration, and profuse bleeding.  The wound was inflicted upon Saenz by the Defendants Flores and Romero.  When Saenz was transported to jail, Defendant Flores and Romero disobeyed orders to transport him.  Before Saenz was being transported by Flores and other unknown officers he had no head injury.   However, once at the jail, Saenz suffered from the head injury with profuse bleeding.  Saenz also had numerous marks all over his body consistent with trauma from multiple strikes from Defendants' batons, flashlights, feet, fists and other hard objects.  There was no justification for Defendants to inflict this cruel and unusual torture upon Saenz.

16.     After defendants beat, struck and injured Saenz,  Saenz was dragged for at least 18 minutes throughout the El Paso jail.   While he was dragged, there were numerous employees of the El Paso Police Department who saw him being dragged.  On information and belief, some of those El Paso Police Officers who witnessed Saenz being dragged were supervisors, and policy makers for the City of El Paso Police Department. The El Paso Police Officers and other persons who witnessed the incident recognized that Saenz was in grave condition.  For example, an Emergency Medical Technician at the scene opined that he felt the injuries to Mr. Saenz were life threatening and that without immediate medical attention, Mr. Saenz would die.   As another example, a nurse at the scene recognizing the serious condition of Mr. Saenz begged the El Paso Police Officers present to immediately call for an ambulance because she feared for the life of Mr. Saenz. The nurse was unable to call for an ambulance herself, but three different times El Paso Police Officers ignored the pleas of the nurse to call for an ambulance.

17.    The El Paso Police Officers ignored the serious medical condition of Saenz and refused to

provide medical treatment or even to immediately call for an ambulance.  Instead, they

maliciously and callously mocked Saenz who was only semi-conscious while being

dragged.   An officer recognized Mr. Saenz as a former Mr. El Paso.   Rather than

rendering aid, the El Paso Police Officer called out that Mr. Saenz body building and

"steroids" would not help him now.   Other El Paso Police Officers laughed at their

compatriot's "jokes."   The   El Paso Police Officers continued to taunt and tease Mr.

Saenz as he was dragged in a semi-conscious state, laughing at his injuries, and at his

grave medical condition, rather than providing any of the desperately needed medical

treatment in violation of Mr. Saenz' Fourth, and Fourteenth Amendment Rights.

18.    Attached as *Exhibit A* to Plaintiff's Response in Opposition to Defendant Alejandro

Romero's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 97) and

incorporated herein by reference is a true and correct  copy of the video tape from the jail

showing how Mr. Saenz was dragged by Flores and Romero and later shot by Flores.   As

shown by the video, and witness statements obtained in discovery, Mr. Saenz was bleeding

so profusely while being dragged all around the jail that trustees had to mop up his blood

from the floor.

19.    The fact that so many members of the El Paso Police Department were present to witness

Saenz' urgent need for medical treatment, failed to provide such treatment in deliberate

indifference to his medical needs, laughed at Saenz instead of providing medical treatment,

deliberately opposed others who attempted to address his urgent need for medical

treatment, and allowed him to be tortured while bleeding profusely and dragged for 18

minutes by his shoulders, rather than transported on a Gurney, wheel chair or in another more humane manner, demonstrates that the City of El Paso condoned and ratified this unconstitutional conduct.

20.     If the City of El Paso properly trained and supervised its employees they would never have allowed Mr. Saenz to be treated in the manner he was treated while in custody. Moreover, after the incident occurred, the Chief of Police for the El Paso Police Department was aware of the actions of his officers.    The City of El Paso knew of the treatment of Saenz because interviews of witnesses were conducted that advised the Policy Makers for the City of El Paso that Saenz was unarmed, not dangerous, bleeding, in dire medical need, and that a large number of City of El Paso Police Officers acting under color of authority, were deliberately indifferent to the urgent medical needs of Mr. Saenz.  The Policy Makers for the City of El Paso Police Department knew from witness statements in their own investigation that several City of El Paso Police Officers refused to provide medical treatment to Saenz and instead teased him, mocked him and humiliated him.    Policy Makers for City of El Paso Police Department were also provided with the video tape showing the conduct of numerous City of El Paso Police Officers allowing Saenz to be tortured while he was dragged, causing him pain, suffering and humiliation in conscious disregard for his health, rights and safety.    Yet, the Policy Makers for the City of El Paso Police Department ratified and condoned the actions of the various officers.

21.     Defendants have produced more than 1,800 pages of discovery materials in this case.  Yet, it does not appear from the material reviewed that any of the officers other than Flores received any punishment or discipline from City of El Paso Police Department policy

makers.   This lack of discipline is significant.   First, it shows ratification by the City of El Paso of the actions of its officers who displayed deliberate indifference to the medical needs of Mr. Saenz.   Second, the fact that so many City of El Paso Police Officers allowed Saenz to be dragged and tortured demonstrates a widespread custom and practice in the department where the torture and dragging of a prisoner who is potentially bleeding to death is so acceptable that the officers, including supervisors, would joke and laugh about it.   Third, this lack of discipline demonstrates a lack of training which resulted in the unconstitutional treatment of Mr. Sanez.   Fourth, the events demonstrate a lack of proper supervision by the City of El Paso Police Department.   Individually any one of these four factors demonstrates constitutional violations by defendant El Paso Police Department for purposes of Monell liability against the department.   Collectively, these four factors demonstrate a wide spread pattern and practice in the City of El Paso Police Department of deliberate indifference to a detainee's serious medical needs that it may constitute an official custom and policy.

22.     To further harm Daniel, the Defendants used handcuffs with a longer than usual chain between the two metal wrist clamps so that he could be dragged by Defendants and each of them.   Based on information and belief, Defendants knew of this practice of making the chain longer than the law enforcement industry standard.   Defendants employed the use of a longer than normal chain as part of a well established custom and practice by the El Paso Police Department.  The practice was utilized so often as to become a custom of defendant City of El Paso Police Department.

23.      Based on information and belief, this was not the first time that the Defendants employed

a longer than proper chain linking the metal wrist clamps, and that it was done sufficiently often as to constitute an official custom or practice in deliberate indifference to the constitutional rights of detainees, including a deliberate indifference to their needs for medical attention.

24.    While handcuffed, unarmed and restrained with both hands behind his back on the premises of the jail with numerous law enforcement personnel available to restrain and control him without the use of deadly force, Officer Jose Flores, acting under color of law, pulled out his loaded pistol, shot and killed Daniel Saenz.  Defendants' handcuffing and shackling of Daniel Saenz, repeated tasing with electrical shocks of Daniel Saenz, and use of a pistol in shooting and killing Daniel Saenz was a proximate cause of his injuries and subsequent death.

25.    The actions of the Defendants were unjustified and constituted excessive force based on the totality of the circumstances which included but were not limited to the following: Mr. Saenz was already searched and had no weapons on him.  Mr. Saenz was in handcuffs. His hands were behind his back.  Mr. Saenz was not using deadly force when he was shot and in fact other than struggling a bit while on his stomach and handcuffed, Mr. Saenz was not using any force at all.   The location that Mr. Saenz was involved in was enclosed and part of the jail, so that even if he was able to break free and run from the Defendants while handcuffed, with pants falling down his body and in shoes without laces, he could not go anywhere.   Moreover, running from the police is a misdemeanor and not the type of a crime that would justify deadly force.  Mr. Saenz actions earlier in the day also did not involve any kind of deadly force that would otherwise justify the Defendants' violation of

his Fourth and Fourteenth Amendment Constitutional Rights.

26.     Pleading alternatively, and without waiving the foregoing, Defendants' agents and/or employees were working with authority and/or in the course and scope of their employment with Defendants THE CITY OF EL PASO and G4S.  The improper use of a firearm, taser and equipment, handcuffs, and/or shackles constitutes negligence and/or the negligent use or misuse of tangible personal property under the Texas Tort Claims Act. Defendants and their agents and/or employees, acting with authority and/or in the course and scope of their employment, were negligent and/or were negligent in the use or misuse of tangible personal property, including without limitation the negligent use or misuse of firearm, taser and equipment, handcuffs, and shackles, which was a proximate cause of the injuries and death of Daniel Saenz and caused Plaintiff to suffer injury and damages as described below.

27.     Pleading alternatively, and without waiving the foregoing, Defendants, acting under color of state law, subjected Daniel Saenz, a citizen of the United States of America, to the deprivation of his rights secured by the Constitution and laws of the United States. Defendants violated Daniel Saenz's rights under the Constitution and laws of the United States, including without limitation violations of the Fourth and Fourteenth Amendments of the U.S. Constitution, which was a producing and/or proximate cause of the injuries suffered and death of Daniel Saenz and caused Plaintiff to suffer injury and damages as described below.

28.     Pleading alternatively, and without waiving the foregoing, using excessive force and deadly force, Defendant OFFICER FLORES, and others engaged in unreasonable,

reckless, and/or intentional conduct and acted with deliberate indifference in the use of excessive force in handcuffing, shackling, tasing, shooting, and killing Daniel Saenz, which was a proximate cause of Daniel Saenz's injuries and death and caused Plaintiff to suffer injury and damages as described below.

29.     Pleading alternatively, and without waiving the foregoing, the above-described actions were conducted with the express and/or implied consent of Defendant CITY OF EL PASO.  It was a custom, policy, or practice for Defendant CITY OF EL PASO to permit its officers and/or agents acting under color of law to engage in the intentional conduct and/or deliberate indifference in the use of excessive force and deadly force in handcuffing, shackling, tasing, shooting and killing of  Daniel Saenz while handcuffed and unarmed, deliberate indifference to his serious medical needs, and use of excessive force and deadly force against Daniel Saenz that took place; and Defendant CITY OF EL PASO's custom, policy or practice in authorizing and/or permitting such conduct to take place was a moving force of violations of Daniel Saenz's constitutional rights and his resulting injuries and death and caused Plaintiff to suffer injury and damages as described below.

## IV.  FIRST CLAIM FOR RELIEF
## VIOLATION OF CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEIZURES AND DEPRIVATION OF LIFE (42 U.S.C. § 1983)[AS TO DEFENDANTS FLORES AND JOHN DOE NOW IDENTIFIED AS ALEJANDRO ROMERO]

30.     Plaintiff realleges the foregoing paragraphs.

31.     On or about March 8, 2013, there existed a clearly recognized state and federal right including but not limited to those under the Fourth, and Fourteenth Amendments of the United States Constitution to be free from the objectively unreasonable deprivation of life

without due process of law.

32.    On or about March 8, 2013, there existed a clearly recognized state and federal right

including but not limited to those under the Fourth, and Fourteenth Amendments of the

United States Constitution to be free from unreasonable seizures by individuals acting

under actual or apparent color of law.

33.    On or about March 8, 2013, Defendant FLORES was acting or purporting to act in the

performance of his duties as peace officer with the El Paso Police Department when he

chained, dragged, and shot and killed Daniel Saenz.  Thus, Defendant FLORES was acting

under color of state law.

34.    On or about March 8, 2013, the CITY OF EL PASO and G4S SECURE SOLUTIONS

(USA) INC. had a contract to transport prisoners. At all relevant times herein, Defendant

JOHN DOE now identified as ALEJANDRO ROMERO, was an employee of G4S

SECURE SOLUTIONS (USA) INC. and was acting with actual and/or apparent authority

of Defendant CITY OF EL PASO and was acting under color of state law.

35.    At all relevant times herein, ROMERO and  G4S SECURE SOLUTIONS (USA) INC.

were engaged in activities that has traditionally been the exclusive province of the state,

e.g., transporting suspects or alleged criminal defendants. Additionally, at all relevant

times herein, the City of El Paso was in a position of interdependence with G4S SECURE

SOLUTIONS (USA) INC.  in the transportation of prisoners based on a contract to

provide services whereby G4S SECURE SOLUTIONS (USA) INC.'s employees and/or

agents, including ROMERO, worked hand-in-hand with EPPD officers. Therefore,

ROMERO was acting under color of law.

36. On or about March 8, 2013, Defendant FLORES along with Defendant JOHN DOE now identified as ALEJANDRO ROMERO, among others, chained Daniel Saenz and dragged Daniel Saenz with those handcuffs.

37. On or about  March 8, 2013, Defendants FLORES and JOHN DOE now identified as ALEJANDRO ROMERO used excessive force against Daniel Saenz. While handcuffed, unarmed and restrained with both hands behind his back on the premises of the jail with numerous law enforcement personnel available to transport him, Daniel Saenz was cruelly, maliciously and with deliberate indifference to his medical attention  dragged by his handcuffs and shoulders across the floor rather than using a wheel chair or other transportation device.   Defendants knew or should have known that such actions would cause and did cause pain and suffering to Daniel Saenz.  To further harm Daniel, the Defendants used handcuffs with a longer than usual chain between the two metal wrist clamps so that he could be dragged by defendants and each of them.   Based on information and belief, Defendants knew of this practice of making the chain longer than the law enforcement industry standard.   Based on information and belief, this was not the first time that the Defendants employed a longer than proper chain linking the metal wrist clamps, and that it was done sufficiently often  as to constitute an official custom or practice in deliberate indifference to the constitutional rights of detainees, including a deliberate indifference to their needs for medical attention.

38. Moreover, at the time of the shooting, Defendants FLORES and JOHN DOE now identified as ALEJANDRO ROMERO were aware that Daniel Saenz needed medical or psychiatric care.

14

39.     At the time of the shooting, Daniel Saenz was handcuffed, in-custody, and did not pose an immediate threat to officers or anyone else.

40.     At the time of the shooting, Daniel Saenz was unarmed.

41.     At the time of the shooting,  Daniel Saenz was not committing any crime.

42.     On or about  March 8, 2013, Defendant FLORES used excessive force when he shot and killed Daniel Saenz. Under the totality of the circumstances,  the acts of Defendant FLORES constituted the deprivation of a constitutionally protected right to life without due process of law, while acting under color of Texas state law.

43.     In doing these things, said Defendants acted specifically with the intent to deprive Daniel Saenz of his constitutional rights under the Fourth, and Fourteenth Amendments to be free from unreasonable seizures and to deprive him of his constitutionally protected right to life without due process of law.

44.     Said Defendants subjected Daniel Saenz to the aforementioned deprivations by either actual malice, deliberate indifference or a reckless disregard of his rights under the U.S. Constitution.

45.     Said Defendants acted at all times herein knowing full well that the established practices and customs of the El Paso Police Department would allow a cover-up and allow the continued violation of the Fourth, and Fourteenth Amendments of the Constitution of the United States.

46.     Defendants' conduct in violation of Daniel Saenz's constitutional and civil rights, including but not limited to those rights under 42 U.S.C § 1983, proximately and legally caused injury and damages to Daniel Saenz and Plaintiff.

47.   The aforementioned acts and conduct of said Defendants was willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages.

**V. SECOND CLAIM FOR RELIEF**
**DEPRIVATION OF FAMILIAL COMPANIONSHIP AND SOCIETY**
**(14th AMENDMENT, 42 U.S.C. § 1983)**
**[AS TO DEFENDANT FLORES]**

48.   Plaintiff realleges the foregoing paragraphs.

49.   On or about March 8, 2013, there existed a clearly recognized Federal right pursuant to the Fourteenth Amendment of the United States Constitution to be free from unwarranted state interference in familial companionship and society.

50.   Plaintiff Roswitha M. Saenz is the mother of decedent, Daniel Saenz. The Plaintiff, Roswitha M. Saenz had a clearly recognized constitutional interest in familial companionship and society with the decedent, Daniel Saenz.

51.   By committing the acts alleged herein, Defendant FLORES violated the Plaintiff's civil and constitutional rights to familial association, including but not limited to those rights under 42 U.S.C. § 1983, proximately and legally causing the death of Daniel Saenz.

52.   The Plaintiff has suffered injuries, damages and losses as a result of this deprivation of constitutionally protected rights.

**VIII. THIRD CLAIM FOR RELIEF**
**NEGLIGENCE**
**[AS TO DEFENDANTS G4S AND JOHN DOE NOW IDENTIFIED AS ALEJANDRO ROMERO]**

53.   Plaintiff realleges the foregoing paragraphs.

54.   Pleading alternatively, and without waiving the foregoing, the negligent acts of the agents and/or employees of Defendants G4S and JOHN DOE now identified as ALEJANDRO ROMERO and other negligent conduct as described herein, was a direct and proximate cause of Daniel Saenz's injuries and death and Plaintiff's damages.

55.    Daniel Saenz's injuries and death and Plaintiff's damages were directly and proximately caused as a result of one or more of the following negligent acts and omissions of the part of Defendant G4S's agents and/or employees acting in the course and scope of employment under color of law:

    a.    Improper/negligent use of a firearm by shooting an unarmed handcuffed man.

    b.    Improperly/negligently placing restraints on Daniel Saenz.

    c.    Improper/negligent use of handcuffs.

    d.    Improper/negligent use of shackles.

    e.    Improper/negligent use of taser and equipment.

    f.    Improper/negligent use of excessive force by use of handcuffs and shackles and taser electrical shocks on Daniel Saenz, and improper/negligent use of excessive force by use of a firearm to shoot and kill an unarmed handcuffed man.

    g.    Improper/negligent retention, training, and supervision of its employees' improper use of firearm, restraints, handcuffs, shackles, taser and equipment, and other negligent uses of tangible personal property.

    h.    Negligently providing inadequate or defective handcuffs, shackles, firearm, tasers and other equipment used on Daniel Saenz, and/or negligently providing such equipment that lacked integral safety components necessary for the safety of Daniel Saenz, including without limitation the handcuffs, shackles, firearm, taser and equipment used on Daniel Saenz resulting in his injuries and death.

    i.    Other acts of negligence that may become known through discovery in the case.

56.    Each of which acts and omissions was other than what a reasonable and prudent person would have done under the same or similar circumstances.  Each of which acts and omissions proximately caused Daniel Saenz's injuries and death and Plaintiff's damages.

## IX.  RELIEF REQUESTED

57.   Plaintiff realleges the foregoing paragraphs.

### A.  DAMAGES OF ROSWITHA SAENZ

58.   As a result of the intentional, reckless, deliberately indifferent, negligent and/or grossly negligent conduct of Defendants as described herein, Plaintiff ROSWITHA SAENZ has sustained injuries and damages as a result of the wrongful death of her son, DANIEL SAENZ, such damages including but not limited to the following:

a.   Pecuniary loss, including the loss of the care, maintenance, support, services, advice, counsel, guidance and reasonable contributions of pecuniary value.

b.   Loss of Daniel Saenz's society and companionship, love, affection, comfort, protection, and attention.

c.   Loss of inheritance, gifts, benefits, and other valuable gratuities.

d.   Loss of household services.

e.   Loss of consortium.

f.   Mental anguish.

g.   Loss of her son's love, affection, advice, counsel, care, consortium, protection, services, attention, society and companionship; consortium, protection, services, attention, society and companionship.

h.   Economic damages and losses including medical expense.

i.   Loss of her son's financial support.

j.   Pain and suffering and emotional distress.

k.   Mental anguish and injured feelings.

l.   Funeral and burial expenses.

m.   Past and future medical and counseling expenses.

n.   Hedonic damages.

o.      All other damages as allowed by law.

59.    By reason of the foregoing, Plaintiff is entitled to recover damages for her injuries suffered, and seeks all relief for such damages allowed under the Texas Wrongful Death Act, Tex. Civ. Prac. & Rem. Code §71.002, as permitted by 42 U.S.C. §1983, the Texas Tort Claims Act, and as otherwise provided by law.

## B.   DAMAGES OF THE ESTATE OF DANIEL SAENZ

60.    As a result of the intentional, reckless, deliberately indifferent, and/or negligent conduct of Defendants as described herein, DANIEL SAENZ, and his estate were severely damaged. DANIEL SAENZ suffered injuries to his body and eventually died.  Daniel Saenz suffered damages, including but not limited to:

a.      Excruciating physical pain and mental anguish.

b.      Disfigurement.

c.      Loss of earning capacity.

d.      Physical impairment.

e.      Bodily injuries.

f.      Conscious pain, suffering and excruciating physical agony prior to death.

g.      Medical, hospital and nursing expenses.

h.      Funeral expenses.

i.      Hedonic damages.

j.      Loss of enjoyment of life.

61.    By reason of the foregoing, Plaintiff is entitled to recover damages on behalf of the Estate of DANIEL SAENZ, Deceased, for damages suffered, and seeks all relief for such damages allowed under the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code §71.021, and as permitted by 42 U.S.C. §1983, the Texas Tort Claims Act, and as otherwise provided by law.

## C.  PUNITIVE DAMAGES

62.     Pleading alternatively and without waiving the foregoing, Plaintiff is entitled to punitive

damages because of Defendants' intentional, reckless, and/or deliberately indifferent

conduct, malice, and/or gross negligence, in that the acts and omissions, when viewed

objectively from the standpoint of Defendants at the time of the occurrence, involved an

extreme degree of risk, considering the probability and magnitude of the potential harm to

others and of which Defendants had actual, subjective awareness of the risk involved, but

nevertheless proceeded with conscious indifference to the rights, safety, or welfare of

others.  Plaintiff is entitled to punitive damages in a sufficient amount to punish

Defendants for their intentional, reckless, deliberately indifferent, heedless and/or grossly

negligent conduct and to set an example for others that such conduct will not be tolerated.

## D.  COSTS, INTEREST AND ATTORNEYS' FEES

63.     Plaintiff seeks prejudgment interest on all monies awarded, as to allow the Defendants to

profit from their wrongful conduct would amount to unjust enrichment. Plaintiff seeks all

other prejudgment and postjudgment interest at the maximum rate as allowed by law.

Plaintiff requests an award of reasonable attorneys' fees and costs as allowed by law.

64.     Plaintiff seeks all available damages as permitted under law.  Plaintiff seeks all penalties,

costs, expenses, pre-judgment interest, and attorneys' fees permitted under law.  Plaintiff

asks that the jury set the amount of his damages. Plaintiff seeks monetary relief, including

relief for actual damages suffered, penalties, costs, expenses, pre-judgment interest, and

attorneys' fees, over $1,000,000.00.

## X.  JURY REQUEST

65.     Plaintiff respectfully requests a trial by jury of the issues in this case.

        **WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that Defendants answer

herein and that upon final trial hereof, Plaintiff have judgment against Defendants for all relief

requested, including without limitation, all actual damages and other equitable relief to be made whole as allowed by law, incidental and consequential damages, punitive damages to the extent such damages are allowed by law, attorney's fees, together with costs of suit and prejudgment and post-judgment interest at the maximum rate permitted by law, and for such other and further relief, at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

**SCHERR & LEGATE, PLLC**
Attorneys for Plaintiff
109 N. Oregon, 12th Floor
El Paso, Texas 79901
(915) 544-0100 voice
(915) 532-1759 facsimile

 /s/ Sam J. Legate
**SAM J. LEGATE**
State Bar No. 12166600
**OSCAR MENDEZ JR.**
State Bar No. 24058473

In Association With
**LAW OFFICES OF GOLDBERG & GAGE**
A Partnership of Professional Law Corporations
Bradley C. Gage, Esq. S.B. No 117808
23002 Victory Boulevard
Woodland Hills, California 91367
Tel: (818) 340-9252
Fax: (818) 340-9088
bgage@goldbergandgage.com

 /s/ Bradley C. Gage
**Bradley C. Gage**
State Bar No. 117808

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

GEORGE E. HYDE
SCOTT M. TSCHIRHART
Attorneys at Law
2500 W. William Cannon Drive, Ste. 609
Austin, Texas 78745

FRANCISCO J. ORTEGA
HENRY J. PAOLI
Scott Hulse, PC
1100 Chase Tower
201 E. Main Street
El Paso, Texas 79901

DANIEL ORTIZ
LAURA P. GORDON
**City Attorney's Office**
City of El Paso, Texas
300 N. Campbell, First Floor
P.O. Box 1890 (79950-1890)
El Paso, Texas 79901

JEEP DARNELL
JIM DARNELL, P.C.
310 N. Mesa, Suite 212
El Paso, Texas 79901

  /s/ Sam J. Legate           
**SAM J. LEGATE**

22